UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

**CECILIA M. TAYLOR,**
       **- Plaintiff**

       **v.**                    **CIVIL NO. 3:06CV34(CFD)**

**MICHAEL J. ASTRUE,**
**COMMISSIONER, SOCIAL**
**SECURITY ADMINISTRATION,**
       **- Defendant**

### MAGISTRATE JUDGE'S OPINION

The plaintiff, Cecilia Taylor, brings this appeal under 42 U.S.C. § 405(g) seeking review of a final decision by the Commissioner of the Social Security Administration ("SSA") denying her application for Disability Insurance Benefits ("DIB"). The plaintiff has moved for an order reversing the Commissioner's decision or, in the alternative, for an order remanding her case back to the SSA for further proceedings. (Dkt. #34.) The defendant has moved for an order affirming the decision. (Dkt. #37.) For the reasons set forth more fully herein, the plaintiff's motion should be granted in part and denied in part and the defendant's motion should be denied in all respects. This case should be remanded to the SSA for further administrative proceedings because, inter alia,

the ALJ failed to follow Judge Droney's original remand order in Taylor v. Apfel, 3:00CV2309 (CFD). (Tr. 765-87.)

I. **PROCEDURAL HISTORY**

The history of Ms. Taylor's dealings with SSA are complex and sufficiently recounted in the ALJ's decision. (Tr. 752-53.) Not all of this procedural history is relevant here. That which is relevant is summarized as follows.

The plaintiff originally applied for both Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB") alleging an onset date of July 31, 1989. (Tr. 752.) The applications were eventually bifurcated by the Social Security Appeals Council. With regard to Ms. Taylor's SSI claim, Administrative Law Judge ("ALJ") Roy Lieberman found the plaintiff disabled within the meaning of the Social Security Act ("the Act") as of February 20, 1996, the date of her application. (Tr. 801-805.) Because SSI benefits may only be awarded from the date of the application and, unlike DIB, may not be paid retroactively thereto, the ALJ made no finding regarding Ms. Taylor's specific disability onset date. (Pl's Mem. in Supp. at 5); 20 C.F.R. § 416.501 ("Payment of benefits may not be made for any period that precedes the first month following the date on which an application is filed . . . .") Ms. Taylor currently receives SSI benefits and has received past due benefits dating back to her application date in 1996.

The plaintiff's DIB claim was originally denied by ALJ Katherine Morgan on May 11, 1998, (Tr. 20-25), and the decision was affirmed by the Appeals Council on September 26, 2000 (Tr. 6-8). The Commissioner's denial of the plaintiff's DIB application was appealed to the United States District Court for the District of Connecticut. The case, bearing docket number 3:00cv2309, was assigned to Judge Droney. Judge Droney referred it for all purposes to Judge Garfinkel. On October 20, 2002 Judge Garfinkel issued a twenty-three page recommended ruling which is of particular importance here.

In his decision, Judge Garfinkel recommend that the case be remanded for further proceedings because the ALJ had not adequately developed the record with regard to (1) the plaintiff's mental health status prior to the date she was last insured for DIB and whether her mental health could be evaluated independent of her alcohol dependence; (2) whether any doctor could pinpoint the onset date of her psychiatric impairments; and (3) how a 1995 sexual assault exacerbated her impairments. (Tr. 783-87.) Judge Droney accepted and adopted Judge Garfinkel's recommended ruling in its entirety on November 8, 2002. (Tr. 765.)

Upon remand to the Commissioner, a hearing was held on the plaintiff's DIB application on January 21, 2004 before ALJ Roy Lieberman. (Tr. 996-1012.) The claimant was not present, but her attorney, Charles Pirro, was as was medical expert ("ME") and

clinical psychologist Dr. Bill Fuess. On May 10, 2004 ALJ Lieberman issued a written decision denying the plaintiff's DIB application. (Tr. 752-62.) ALJ Lieberman found, inter alia, that the plaintiff was not disabled as of June 30, 1994 because, but for her alcoholism, she retained the residual functional capacity to perform her past relevant work. (Tr. 762.) The Appeals Council affirmed the ALJ's decision, thus making it a final decision of the Commissioner appealable to the District Court. (Tr. 738-41.)

## II. **MEDICAL HISTORY / BACKGROUND**

Because Ms. Taylor's medical history has been throughly reviewed previously, it is unnecessary to recount it in its entirety herein. The portion of Judge Garfinkle's opinion that outlines the plaintiff's medical records is therefore incorporated by reference. (Tr. 766-77.) The court pauses simply to briefly summarize the plaintiff's medical history and discuss the new evidence collected upon remand.

The plaintiff is currently fifty-seven years old and last worked on July 31, 1989 as a dental assistant. (Tr. 766.) Though her claimed impairments have morphed throughout the years, she has generally claimed at one time or another back pain, neuropathic and/or arthritic ailments such as tingling and numbness in her extremities, pulmonary impairments, insulin dependent diabetes, memory problems, and depression and/or anxiety disorders. The record is also replete with evidence that the plaintiff suffered

from severe alcohol dependence for most of the eighties and nineties. She has apparently been sober for almost a decade. (Tr. 803.)

ALJ Lieberman found conclusively that as of February 20, 1996, Ms. Taylor suffered from "the following medically determinable severe impairments: alcohol dependence currently in remission, major depression, degenerative disease of the low back and knees with chronic low back pain and knee pain, diabetes mellitus and diabetic neuropathy, and COPD [chronic obstructive pulmonary disease]." (Id.) In light of these findings, on remand, the question became whether and to what extent these impairments existed on December 31, 1994, the day Ms. Taylor was last insured for DIB.[1]

The second DIB hearing took place January 21, 2004. The only testimony taken at that hearing was from Dr. Bill Fuess.[2] Dr. Fuess also testified at the plaintiff's August 13, 2002 SSI hearing. (Tr. 1051.) The medical records Dr. Fuess reviewed for the DIB hearing were the same as those he reviewed for the SSI hearing.

Dr. Fuess testified that the prominent feature of Ms. Taylor's records was severe alcoholism and noted numerous hospitalizations

---

[1] The court will refer to December 31, 1994, the date Ms. Taylor was last insured for DIB, as her "DLI" i.e. her Date Last Insured.

[2] The plaintiff did not appear at the January 21st DIB hearing, nor did she appear at a March 22, 2002 SSI hearing or an August 13, 2002 supplemental SSI hearing. To date, the only testimony the plaintiff has given occurred during the her May 11, 1998 hearing before ALJ Morgan.

for detoxification. (Tr. 1004.) He also indicated that the record showed diagnoses of severe depression and a personality disorder, but observed that there were no records showing any diagnostic evaluations such as GAF (Global Assessment of Functioning) scores or psychometric testing. (Id.)

Regarding, Ms. Taylor's personality disorder, Dr. Fuess commented that such impairments are usually longstanding. (Tr. 1005, 1007.) Further, the Doctor noted that individuals with personality disorders often also have substance abuse issues and, in Ms. Taylor's case, it was likely that her psychiatric issues were her primary problem, with substance abuse being a symptom. (Tr. 1005-07.) Finally, Dr. Fuess was asked if he could estimate the plaintiff's functionality as of her DLI. Dr. Fuess testified that Ms. Taylor likely suffered from a personality disorder and depression as of her DLI, but that the record was insufficient to determine whether at that time she met or equaled listing 12.04 or whether she could function in a simple work setting. (Tr. 1007-08.)

After the DIB hearing, but before ALJ Lieberman issued his decision, Ms. Taylor's attorney submitted ninety-five pages of new medical records from 1991 to 1994. (See e.g., Pl's Mem. in Supp. at 19; Tr. 899-993.) These records consisted of notes and reports from hospitalizations at Norwalk and Greenwich hospitals. (Pl's Mem. in Supp. at 19) The records show that the plaintiff was admitted three different times for inpatient detoxification. The

notes also suggest mental health issues.  For instance, on several different occasions the plaintiff is diagnosed with either personality disorder and/or depression.  (Tr. 899, 904, 945, 954, 959.)  There are also notes describing suicidal ideations, including a report that Ms. Taylor had been found by her sister with an electrical cord wrapped around her waist and tied to a kitchen cabinet.  (Tr. 902); (<u>see also</u> Tr. 957.)  Her sister reported that she believed Ms. Taylor was suicidal.  Conversely, on other occasions medical personnel determined that she was not a danger to herself or others.  (Tr. 912; 945.)  The notes also indicate that the plaintiff suffered from hallucinations, including a report that the plaintiff was having visions of her then deceased fiancé.  (Tr. 903, 905).

Finally, the new records are largely unremarkable regarding evidence of physical impairments, including those found "severe" by ALJ Lieberman as of February 20, 1996.  However, there are notes indicating pneumonia and/or other respiratory problems, which may be consistent with ALJ Lieberman's finding that Ms. Taylor suffered from severe COPD.  (<u>See e.g.</u>, Tr. 899.)

### III.  <u>STANDARD</u>

In reviewing a decision of the Commissioner under § 405(g), the district court performs an appellate function.  <u>Zambrana v. Califano</u>, 651 F.2d 842, 844 (2d Cir. 1981); <u>Igonia v. Califano</u>, 568 F.2d 1383, 1387 (D.C. Cir. 1977).  A reviewing court will "set aside

the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). See also Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)("As a general matter, when we review a decision denying benefits under the Act, we must regard the [Commissioner's] factual determinations as conclusive unless they are unsupported by substantial evidence")(citations omitted). "Substantial evidence" is less than a preponderance, but "more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). See Yancey v. Apfel, 145 F.3d 106, 110 (2d Cir. 1998); Bills v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951). See also New York v. Sec'y of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990)(stating that the court, in assessing whether the evidence which supports the Commissioner's position, is required to "review the record as a whole")(citations omitted).

## IV. DISCUSSION

The plaintiff has alleged an amended onset date of June 30, 1994. (Tr. 1003.) This is an arbitrary date that was picked at the hearing by the ALJ and plaintiff's counsel. (Tr. 1002-03.) The

date was chosen because her DLI was December 31, 1994. Thus, to be eligible for DIB she must have been disabled on or before that date. Moreover, because her DIB application was filed in February 1996 she would only be entitled to retroactive benefits for one year prior to her application. (Pl's Mem. in Supp. at 5.) Thus, if Ms. Taylor were disabled as of her DLI she would be entitled to a year's worth of DIB, if she were not disabled prior to that date, she would receive nothing. In sum, the arbitrary onset date is essentially meaningless, the critical issue being whether Ms. Taylor was disabled on or before her DLI.

The issue here on review is a fairly narrow one because it is uncontroverted that the plaintiff would be considered disabled if her alcohol dependence were permitted to be factored into the disability determination. However, a claimant is not considered disabled within the meaning of the Act if alcohol abuse is determined "to be a contributing factor material to the Commissioner's determination that the individual is disabled." Public Law 104-121 § 105(a)(1). Alcohol abuse is a material contributing factor if the claimant would not be disabled within the meaning of the Act if the claimant stopped using alcohol. 20 C.F.R. § 404.1535. The ALJ determined that the claimant's alcohol abuse was a material contributing factor to her disability. Therefore, the critical question on appeal is whether substantial evidence supports the ALJ's determination that the claimant would not have

been disabled within the meaning of the Act if she had stopped using alcohol.

In making his determination, the ALJ relied on two pieces of evidence. First, the ALJ relied on Dr. Fuess' testimony that "he could not opine as to the claimant's mental limitations without her alcohol abuse prior to her date last insured, as the medical evidence of record was inadequate to make that determination for that time period." (Tr. 759.) Second, the ALJ highlighted the fact that "[t]here is no assessment from any treating source of the claimant's mental limitations without her alcohol abuse." (Id.) For the reasons that follow, the court finds that this evidence does not meet the "substantial evidence" threshold.

**A.**

At the DIB hearing, Dr. Fuess' testified that while it was ***possible*** that the plaintiff suffered severe limitations prior to her date last insured, absent alcohol abuse, he could not say it was ***likely*** due to the lack of medical records. (Tr. 1007-08, 1010.)[3]

---

[3]

The portion of the hearing transcript on point is as follows:

> ***[ALJ]***. . . the question is, would, assuming she had not been drinking during that period, assuming that she had stopped drinking or not, not been drinking, is it also likely she would have had significant difficulty dealing with, or significant functional limitations?
> ***[Dr. Fuess]*** Yes, she probably would have still had some functional limitations.
> ***[ALJ]*** Do you think should could have functioned in a work setting, in a, in a simple work setting?

Had Dr. Fuess' opinion been based upon all available medical records, it might well constitute substantial evidence on its own, because the plaintiff bears the burden of proving she cannot perform her past relevant work. Berry v. Schweiker, 675 F.2d. 464, 467 (2d Cir. 1982). However, it is undisputed that Dr. Fuess did not have all of the available medical evidence before him when he rendered his opinion. (See Def's Mem. in Supp. at 24.) Rather, on February 24, 2004 Ms. Taylor's attorney provided the ALJ with an additional ninety-five pages of hospital records from Greenwich and Norwalk

---

> *[Dr. Fuess]* Your Honor, from, from the materials, the lack of information, I could not say. I don't have the, the records to really support whether or not - -
>
> *[ALJ]* Okay.

(Tr. 1007-08.)

Later, when plaintiff's attorney asked whether it was likely that the limitations found by the ALJ as of 1996 would have existed on or before Ms. Taylor's DLI, the following exchange took place:

> *[ALJ]* Well, I think that's the same question I asked about.
> *[Attorney Pirro]* Well, but it's more specific because we do have those specific limitations in the later time.
> *[ALJ]* I think the question would be likely or possible. I think he's already said, you already said possible?
> *[Dr. Fuess]* Sure, possible, possible, yes, yeah.
> *[ALJ]* Likely?
> *[Dr. Fuess]* Likely, no, I couldn't say.
> *[ALJ]* You can't say.
> *[Dr. Fuess]* I can't say if it was likely.

(Tr. 1010.)

-11-

hospitals from the relevant time period -- 1991 to 1994. (Tr. 899-993.) This evidence was thus submitted after Dr. Fuess' January 21st testimony, despite Judge Droney's order that the ALJ obtain all available medical records and attempt to discern whether any treating or consultive physician could determine a precise onset date.

The ALJ concluded that "[t]here is nothing in the medical evidence of record recently submitted by the claimant's representative that would substantively change the basis of Dr. Fuess' testimony." (Tr. 757.) The court does not agree. The court acknowledges that the new evidence does not contain psychiatric diagnostic testing targeted specifically at Ms. Taylor's mental health state absent alcohol abuse during the relevant period. However, the question is not whether the evidence convinces the court that Ms. Taylor was definitely disabled irrespective of her alcoholism prior to the end of 1994, but whether the ME's opinion could have been different if he had the opportunity to review the evidence. The court finds that it is possible that Dr. Fuess' opinion would have been different if confronted with the new evidence. The new evidence contains notes indicating hallucinations (Tr. 903-05); suicidal ideations (Tr. 902, 957); chronic anxiety disorder (Tr. 945); personality disorder (Tr. 899, 904); as well as adjustment disorder and depression (Tr. 954, 959). The Social Security Regulations list many of these impairments or symptoms as

-12-

prerequisites to a finding that a claimant meets or equals listing 12.04 for affective disorders.

The defendant argues that "none of the records in Plaintiff's late submission contain the type of evidence that Dr. Feuss felt would be necessary to accurately assess her concentration and cognitive abilities during the relevant period, such as GAF scores or psychometric testing." (Def's Mem. Supp. at 25.) It is true that listing 12.04 requires that the claimant exhibit "marked" restrictions in at least two areas of cognitive and social functioning. If this were the first time Ms. Taylor's claim were being assessed, proof of her cognitive abilities as of her DLI would likely be necessary for Ms. Taylor to carry her burden. However, this is not the first time Ms. Taylor has been evaluated. Implicit in the ALJ's SSI decision finding that her impairments met or equaled listing 12.04 is the finding that Ms. Taylor suffered from the requisite marked cognitive restrictions. Therefore, the question is not whether Ms. Taylor's impairments caused marked cognitive restrictions, but rather; when did these marked restrictions begin? ALJ Lieberman relied on Dr. Fuess to give an educated unbiased response to this question, but the response given was not fully informed.

The fact that Dr. Fuess did not have before him the new evidence is also troubling because his hesitancy to say Ms. Taylor was likely to be significantly impaired if she had stopped drinking

prior to her DLI was explicitly premised upon the lack of relevant records. It must be emphasized that Dr. Fuess' testimony was not that Ms. Taylor's impairments possibly existed prior to the end of 1994, but that it was not likely that they did. Rather, he said it was possible, but that he could not say from the sparse record whether or not it was likely. In other words, if he had more information, he might well think it was likely that Ms. Taylor suffered severe limitations absent alcohol abuse prior to December 31, 1994. More information was available, but Dr. Fuess was not given it to review.

The court places no value on the weight of this new evidence other than to find that it is possible that Dr. Fuess' testimony would have been different had he had these records before him. At the very least, Dr. Fuess would have had the opportunity to compare the pre-1994 medical records to the post-1994 records to determine whether the psychiatric observations made by the medical personnel at Greenwich and Norwalk hospitals were consistent with findings made after 1996. Because the ALJ relied almost exclusively on the ME's opinion, the case must be remanded so that the ME's opinion can be fully informed.

**B.**

Affirmance is also not appropriate here because the ALJ did not elicit specific testimony from the ME regarding an alleged sexual assault that Ms. Taylor fell victim to in 1995. Moreover, the court

-14-

finds that the ALJ's failure to reconcile the findings made with regard to the SSI application with those made in conjunction with the DIB application was error under the circumstances here.

ALJ Lieberman found that the claimant was fully disabled within the meaning of the Act as of February 20, 1996 – less than fourteen months after her DLI. In making this determination, the ALJ found that "the claimant has the following medically determinable severe impairments: alcohol dependence currently in remission, major depression, degenerative disease of the low back and knees with chronic low back pain and knee pain, diabetes mellitus and diabetic neuropathy, and COPD [chronic obstructive pulmonary disease]." (Tr. 803.) These findings led the ALJ to conclude that the combination of Ms. Taylor's physical and mental impairments equaled listing 12.04 (Affective Disorders) of the listed impairments.[4] 20 C.F.R., Part 404, Subpt. P. App. 1.

In contrast, as of December 31, 1994 the ALJ found "no medical evidence of record demonstrating any significant limitations to the claimant's ability to do basic work activity resulting from physical impairments. Therefore, the undersigned finds that any and all alleged physical impairments are considered 'non-severe' as that term of art is defined by the Social Security Administration." (Tr.

---

[4] If the Administration determines that a claimant's impairments meet or equal one of the listed impairments it will find the claimant disabled. 20 C.F.R. § 416.920(a)(4)(iii).

758.)  The ALJ further found that "if the claimant stopped her alcohol abuse, she would have had an unlimited physical residual functional capacity, with additional mild mental limitations of precluding work in extremely complex or stressful environments." (Tr. 762.)

The disparate conclusions reached by the ALJ begs the question; what happened in the less than fourteen month period to cause the plaintiff to so rapidly deteriorate both mentally and physically? One possible answer identified in Judge Garfinkel's opinion is the sexual assault the plaintiff allegedly fell victim to in early 1995. (See Tr. 781.)  Judge Garfinkel found that ALJ Morgan's failure to adequately develop the record as to the effect of the sexual assault was one basis upon which remand was justified.  The record has not been developed any further on this point upon remand.

What Judge Garfinkel's opinion insinuated and what the medical records arguably suggest is that the 1995 sexual assault may have acted as the proverbial straw that broke the camel's back with regard to Ms. Taylor's mental state.  In other words, it might have been the triggering event that would explain why in early 1996 Ms. Taylor met the Commissioner's listing for Affective Disorders, but at the end of 1994 it was determined that she did not.  Because the ME was relied on so heavily here, it was imperative that he be directly questioned as to the effect of the sexual assault.  Judge Garfinkel recognized the importance of this evidence, but the ALJ

failed to elicit any further testimony upon remand.

Moreover, aside from failing to follow Judge Droney's remand order with regard to pinpointing a psychiatric onset date, the ALJ made no effort to explore whether the physical impairments found in 1996 might reasonably have existed in 1994. Social Security Ruling 83-20 recognizes that it is sometimes necessary to infer an onset date that predates medical records. The Ruling suggests that the ALJ rely on a medical expert in such situations as well as attempt to secure all available medical information that might aid in determining an onset date. With regard to Ms. Taylor's physical limitations the ALJ here did neither. The ALJ did not obtain records from Greenwich and Norwalk hospitals although such records existed. Further, the ALJ took no additional testimony regarding the plaintiff's physical impairments.

While the court agrees with the defendant's characterization of the impairments listed in the reports from Greenwich and Norwalk hospitals as "transitory," (Def's Mem. Supp. at 18), the fact remains that as of February 1996 the ALJ found that Ms. Taylor suffered from several severe non-transitory physical impairments. In his SSI decision, the ALJ credited Dr. Sulavik, an internist/medical expert who testified that the plaintiff's impairments prevented her from sitting or standing for long periods and lifting more than ten pounds. (Tr. 804) ("Dr. Sulavik is also credible regarding the claimant's physical limitations, and entitled

to significant weight.") The state of these physical impairments as of December 31, 1994 was not discussed by the ALJ within his DIB decision nor was a medical expert ever questioned on the topic. At the very least, a medical expert should have been asked whether it is possible that the plaintiff's degenerative disease of the low back and knees, diabetes mellitus, neuropathy, and COPD could all have manifested themselves between December 1994 and February 1996 or whether they existed, in some form or another, at the time of the plaintiff's DLI.

## V. CONCLUSION

For the reasons stated herein, the plaintiff's Motion to Remand or, in the Alternative, to Reverse **(Dkt. # 34)** should be **GRANTED** in part and **DENIED** in part. **JUDGMENT** should enter **REVERSING** the decision of the Commissioner and **REMANDING** the case for administrative proceedings consistent with this opinion. The defendant's motion to affirm **(Dkt. #37)** should be **DENIED**. Upon remand, the ALJ should (1) ensure the ME reviews all of the medical records available; (2) specifically question the ME regarding the mental and physical effects of the 1995 sexual assault; and (3) question an appropriate medical expert on the issue of whether any of the plaintiff's severe physical impairments which were determined to exist as of February 20, 1996, might have existed prior to her DLI.

Either party may timely seek review of this recommended ruling

in accordance with Rule 72(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 72(b). Failure to do so may bar further review. 28 U.S.C. § 636(b)(1)(B); <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

**IT IS SO ORDERED.**

**Dated at Hartford, Connecticut this 17th day of July, 2007.**

<u>/s/ Thomas P. Smith</u>
**THOMAS P. SMITH**
**UNITED STATES MAGISTRATE JUDGE**